Robert J. Gralewski, Esq.
CA BAR ID: 196410
**KIRBY McINERNEY, LLP**
600 B Street, Suite 2110
San Diego, California 92101
Telephone: (619) 784-1442
Facsimile: (212) 751-2540
Email: bgralewski@kmllp.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISE MICHELLE CLEMENTS,<br><br>             Plaintiff,<br><br>v.<br><br>FLO HEALTH, INC.,<br><br>             Defendant. | Case No.:<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Elise Michelle Clements ("Plaintiff"), on behalf of herself and all others similarly situated, alleges against Defendant Flo Health, Inc. ("Flo Health"), based upon personal knowledge where applicable, information and belief, and the investigation of counsel, the following:

## <u>SUMMARY OF ALLEGATIONS</u>

1.      Defendant Flo Health owns and developed the Flo Period & Ovulation Tracker ("Flo App" or "App"), one of the most popular health and fitness mobile applications in the world.

2.      The Flo App purports to use artificial intelligence to provide advice and assistance specifically related to women's health, such as by serving as an ovulation calendar, period tracker, and pregnancy guide, and also as a wellness and lifestyle tracker.

3.     Flo Health touts that its app is the "#1 mobile product for women's health." According to Flo Health, the Flo App has been installed more than 180 million times and has more than 38 million monthly active users. Based on its active audience, the App is the #1 period tracker in the United States, and is the #1 most downloaded health app in the Apple App Store.[1]

4.     Flo Health presents itself as a leader in women's health care with at least "60 doctors and experts from Europe and North America" on its Medical Board.[2]

5.     In order to use the Flo App effectively, millions of users—including Plaintiff—provided Flo Health with personally identifying information (e.g., their names, email addresses, dates of birth, and places of residence), along with personal details about their sexual health, menstruation cycles, gynecological health, and physical well-being through a series of extremely personal "survey questions," such as (1) "do you experience any pain during sex?" (2) "how often do you have sex?" (3) "how often do you masturbate?" (4) "have you noticed a decrease in sexual desire?" (5) "are you sexually active during your period?" and (6) "what type of relationship do you have at present?"

6.     Flo Health elicited personal health information from users with probing questions about their physical and mental health and personal habits, such as: (1) "do you smoke" (2) "how often do you experience stress?" (3) "do you want to change your weight?" (4) "do you follow a particular diet?" (5) "how often do you exercise?" (6) "do you get yeast infections?" (6) "do you have any chronic diseases?" and (7) "do you have any reproductive system diseases?"

7.     Plaintiff and the other class members were required to answer thirty survey questions like these within the first few minutes of using the Flo App. Thereafter, Flo Health elicited even more health and other personal information from Plaintiff and class members on a daily basis, such as whether they were menstruating, their weight, how long they slept,

---

[1] The Flo App was also featured as the "App of the Day" in the Apple App Store in over 30 countries.
[2] *Our Medical Expertise*, under *Medical Board*, FLO HEALTH, INC., https://flo.health/medical-expertise.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

whether they had sex (including questions about their sex drive, whether they masturbated, and whether they had unprotected sex), their mood (ranging from "calm" to "very self-critical"), and if they had any physical health symptoms (such as headaches, breast tenderness, acne, or fatigue).

8.      With access to this highly sensitive information, Flo Health claims it is able to predict ovulation, aid in pregnancy and childbirth, and provide lifestyle and wellness suggestions. Flo Health is the developer of a popular mobile app that collects menstruation and fertility information from millions of users worldwide.[3]

9.      Plaintiff and class members provided this information to Flo Health based on the company's repeated assurances that their personal health data would remain protected and confidential and would not be disclosed to third parties.

10.      Plaintiff and the class had a reasonable expectation of privacy of their personal data, based upon social norms as to the confidentiality of such data. These norms are reflected in laws, regulations, and principles promulgated in the United States and Australia to prevent and punish the surreptitious sharing and collection of personal consumer data. Personal consumer data is an extremely valuable commodity that is coveted by some of the largest and most powerful companies on earth, who seek to use the data to target consumers with online ads that can be acutely invasive and offensive, in addition to the humiliation, embarrassment, and fear inherent in any unauthorized release of one's personal information.

11.      Throughout the operative time period, Flo Health's privacy policies and public statements assured the public and its users that Flo Health would not share users' personal health data with anyone. These assurances and promises by Flo Health continue to the present day.

---

[3] Joint Statement of Commissioner Rohit Chopra and Commissioner Rebecca Kelly Slaughter Concurring in Part, Dissenting in Part, *In the Matter of Flo Health, Inc.*, Commission File No. 1923133 (F.T.C. Jan. 13, 2021), https://www.ftc.gov/system/files/documents/public_statements/1586018/20210112_final_joint_rcrks_statement_on_flo.pdf.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

12.     For example, in 2018, Flo Health assured users that it would not share its users' responses to the personal questions asked in Flo Health's questionnaire surveys with any third parties. Flo Health also promised not to share "information regarding your marked cycles, pregnancy, symptoms, notes[,]" or information about "which articles [users] view[,]" i.e., users' personal health data. Flo Health further assured users that the limited third parties with whom it shared other personal data "w[ould] never use such information for any other purpose except to provide services in connection with the App."[4]

13.     Moreover, at least since June 2016, Flo Health's website acknowledges that "[p]rivacy in the digital age is of utmost importance[]" and assures that "Flo provides a secure platform for millions of women globally."[5] Similarly, Flo Health's privacy policy states, in all capital letters, that it "WILL NOT TRANSMIT ANY OF YOUR PERSONAL DATA TO THIRD PARTIES, EXCEPT IF IT IS REQUIRED TO PROVIDE THE SERVICE TO YOU (E.G. TECHNICAL SERVICE PROVIDERS), UNLESS WE HAVE ASKED FOR YOUR EXPLICIT CONSENT."[6]

14.     Contrary to the above assurances and promises, Flo Health knowingly collected, transmitted, and allowed virtually unfettered third-party access to Plaintiff and the class' personal health data to third-party companies such as Facebook and Google.

15.     Flo Health disclosed its users' highly sensitive health information to third parties by incorporating "software development kits" ("SDKs") into the Flo App. An SDK is a third party's collection of tools and programs that allow an app developer (e.g., Flo Health) to its track users, compile and analyze data, and use the third party's tools and perform other functions that can be further developed and used by the third party and others. More specifically, SDKs from marketing and analytics firms or advertisers such as Google or

---

[4] *Privacy Policy (archived)*, under *Sharing you* [sic] *personal data and information*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/may-25-2018 (effective May 25, 2018).
[5] *About Us*, under *What Flo stands for*, FLO HEALTH, INC., https://flo.health/our-mission (last visited July 28, 2021).
[6] *May 25, 2018 Privacy Policy (archived)*, *supra* note 4, under *Personal data and information we collect from you*.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Facebook can be deployed into an app to share user data between the app and those same firms and/or other parties.

16.     The Flo App SDKs gave Flo Health and its third-party business partners the ability to identify and target users that would be prime targets for advertisements, based on the data entered into the App. Flo Health also transmitted and/or made available the personal health data of Plaintiff and class members to marketing and analytics firms or advertisers such as Google and Facebook, in direct contravention of Defendant's assurances that this information would not be disclosed.

17.     Plaintiff and class members never consented to their personal health information being sold or otherwise used or made available to third parties for marketing purposes. In fact, as detailed herein, Flo Health unequivocally promised that this information would not be sold or otherwise disclosed to third parties for purposes not necessary to the functioning of the Flo App. Despite these statements, Flo Health disclosed and/or sold Plaintiff and class members' data to third-party advertisers, who targeted Flo App users using their own data. For example, information indicating that a particular Flo App user was pregnant or attempting to get pregnant could be used to specifically target that user with ads for prenatal vitamins, breast pumps, or fertility treatments, among other things. In some cases, Flo Health (or an astute advertiser) might even know a user is pregnant before she does. In other cases, the pregnancy may have terminated without the knowledge of Flo Health or the advertiser. In either case, the user could be targeted with ads that the user may find disturbing, depending on whether they did or did not intend to get pregnant.

18.     Flo Health's conduct was first disclosed by the Wall Street Journal on February 22, 2019. The Wall Street Journal reported that for years, Flo Health had disclosed its users' personal health data to third parties, without restriction, in contravention of Flo Health's promises that it would restrict access to users' personal health data.[7]

---

[7] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then They Tell Facebook*, WALL STREET JOURNAL (Feb. 22, 2019 11:07 AM), https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

19.     In response to the revelation that Flo Health systematically shared its users' personal health data with third parties, the Federal Trade Commission ("FTC") launched an investigation into Flo Health's data privacy and disclosure practices. The FTC ultimately filed a complaint alleging that Flo Health made a number of misrepresentations to its Flo App users, in violation of their privacy rights. On or about January 13, 2021, Flo Health entered into a settlement with the FTC which prohibited Flo Health from continuing to misrepresent the purposes for which it or other entities collects and/or discloses its users' personal health data; required Flo Health to obtain an independent review of its privacy policy; mandated that Flo Health obtain each user's consent before sharing their data; and directed Flo Health to instruct all third parties who have already received Flo App users' personal health data to destroy that information.[8]

20.     Members of Congress have expressed outrage over Flo Health's conduct. For example, Senator Ed Markey of Massachusetts called Flo Health's betrayal of users' trust a "new low in privacy malpractice."[9]

21.     Throughout these revelations and investigations, and even within the settlement agreement with the FTC, Flo Health denied that it had wrongly disclosed users' personal data.

22.     Defendant's actions violated social norms and the reasonable expectations of privacy of Plaintiff and the other class members and violated federal and state statutory and common law.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), because the amount in controversy for the class exceeds $5,000,000

---

[8] *Developer of Popular Women's Fertility-Tracking App Settles FTC Allegations that It Misled Consumers About the Disclosure of their Health Data*, F.T.C. (Jan. 13, 2021), https://www.ftc.gov/news-events/press-releases/2021/01/developer-popular-womens-fertility-tracking-app-settles-ftc.

[9] Robert Williams, *Facebook collects sensitive personal data from apps, The Wall Street journal reports*, MARKETING DIVE (Feb. 25, 2019), https://www.marketingdive.com/news/facebook-collects-sensitive-personal-data-from-apps-the-wall-street-journa/549084/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

exclusive of interest and costs, there are more than 100 putative class members defined below, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from the citizenship of Defendant.

24.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under the laws of the United States, i.e., the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C.  § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

25.   This Court has general personal jurisdiction over Flo Health because it transacts business in the United States, including in this District, has substantial aggregate contacts with the United States, including in this District, engages and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and purposely availed itself of the laws of the United States.

26.     This Court also has specific personal jurisdiction over Flo Health because it consented to jurisdiction in this District in its Terms of Use, which states:

> Any dispute arising from this Agreement shall be governed by the laws of the State of California without regard to its conflict of law provisions. **SOLE AND EXCLUSIVE JURISDICTION FOR ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE IN AN APPROPRIATE STATE OR FEDERAL COURT LOCATED IN SAN FRANCISCO COUNTY, STATE OF CALIFORNIA . . . .**[10]

27.     Venue is proper in this District pursuant to 28 U.S.C. §  1391(b), (c), and (d) because Flo Health transacts business in this District and a substantial portion of the events giving rise to the claims occurred in this District.

28.     Intra-district Assignment: A substantial part of the events and omissions giving rise to the violations of law alleged herein occurred in the County of San Francisco, and as

---

[10] *Terms of Use*, under *Miscellaneous*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

such, this action may properly be assigned to the San Francisco or Oakland divisions of this Court pursuant to Civil Local Rule 3-2(c).

## PARTIES

### A.   Plaintiff

29.   Plaintiff Elise Michelle Clements ("Clements" or "Ms. Clements") is a resident of New South Wales, Australia. In May of 2018, while residing in Australia, Plaintiff Clements downloaded, installed, input data into, used, and continues to use the Flo App. Clements brings this action on behalf of herself and all others similarly situated.

30.   Plaintiff provided Flo Health with her personal health data, including information and/or symptoms about her health and wellness, menstruation cycles, sexual activity, and pregnancies.

31.   Plaintiff reasonably believed that her personal health data would stay private and that Flo Health would not disclose this information to third parties. Plaintiff did not consent or provide permission for Flo Health to sell, share, or otherwise disclose this information.

32.   In direct contravention to its privacy policy and public assurances, Flo Health disclosed Plaintiff's personal health data without her knowledge or consent to one or more third parties.

33.   Because she was unaware of Flo Health's conduct, Plaintiff was not provided notice and did not have the opportunity to provide consent to Flo Health's disclosure of her data to third parties and the use of her personal health data by Flo Health and third parties for their own benefit.

34.   Plaintiff would not have used the Flo App if she had known that Flo Health would sell her personal health data to third parties for advertising and other purposes not specifically required by the Flo App.

### B.   Defendant

35.   Defendant Flo Health, Inc. is a Delaware corporation with principal executive offices located at 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805. Flo Health developed and owns the Flo App, which encourages users to upload personal health

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

information. Flo Health promised to keep users' personal health information confidential, but secretly allowed third parties like Google and Facebook to access the information.

### C.    Third Parties

36.    Third parties such as Google and Facebook offer SDKs to developers that allow them to track, compile, and access valuable information about Flo Health users' activity in the Flo App, and to selectively target these users for ads on the third party's platforms. The Flo App incorporated SDKs from Google, Facebook, and others that offered this functionality not only to Flo Health, but also to these the third-party owners of the SDKs.

37.    SDKs incorporated into the Flo App allowed third parties like Google and Facebook to access the personal health information of Flo Health users in order to locate, select, and target ads for marketing campaigns conducted by advertisers and other users of the third-party platforms.

### FACTUAL BACKGROUND

### I.    Founding of Flo Health, Inc.

38.    Flo Health was founded in 2015 in Minsk, Belarus by a group of mobile app developers. That same year, the company released the Flo App, the first mobile application to make use of artificial intelligence to accurately predict reproductive cycles.

39.    The first version of the Flo App operated essentially as a calendar that allowed users to track their period and ovulation. Subsequent versions expanded the Flo App's functionality to assist with all phases of the reproductive cycle, including the start of menstruation, cycle tracking, preparation for conception, pregnancy, early motherhood, and menopause. The Flo App was also expanded to provide users with overall health and wellness suggestions.

40.    As Flo App's features expanded, Flo Health demanded more personal information from users, including personal details like the user's history of contraceptive methods, vaginal discharge, diseases, water intake, weight, pains and other physical or mental symptoms, mood swings, and sexual activity (including the users' sexual desire levels, whether

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

they experience pain during sex, or whether they use protection). Users can also write "personal notes" to log additional information in the App.

41.     As is often the case with apps that are intended to monetize user data, the Flo App was designed to encourage users to share more and more personal information about themselves, by making the app's very functionality dependent upon such data. Flo Health also used periodic text and email "push" notifications to remind users to log into the Flo App and report their personal information to Flo Health.

42.     In 2017, Flo Health further expanded Flo App's functionality to include social media features alongside its services as a health product. This included a new, worldwide "community" section on the App, which allowed users to anonymously ask and answer questions related to women's health generally, or their own health specifically. Flo Health's community section has been and continues to be quite popular, with many posts from its inception. Flo Health further developed its international standing when it announced it was working on the United Nations Population Fund's "Let's Talk About it. Period." campaign, which aimed to increase public awareness of social and health issues related to menstruation.

43.     By 2018, the Flo App purported to have a "Medical Board"—a team of health experts who helped ensure that Flo Health provided only relevant, high-quality health information to users:

> With our team of scientists, doctors and health experts, we deliver content designed to empower women and help them make more informed decisions about their health and wellbeing.
>
> * * *
>
> Our medical board includes over 60 doctors and experts from Europe and North America, who are passionate about making accurate women's health information accessible to everyone. Our in-house medical team works closely with them to ensure that we deliver the most relevant and high-quality content to our users. Their areas of expertise include Obstetrics and Gynecology, Reproductive Endocrinology, Pediatrics, Nutrition, Neurology, Dermatology and more.[11]

44.     The Flo App steadily grew more popular. By December 2020, 150 million users worldwide had downloaded the App. The App has been rated the #1 period tracker in the

---

[11] *See supra* note 2.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

United States based on active audience and the #1 most downloaded health app in the Apple App Store.

45. Flo Health has gathered and collected personal health data from more than 100 million of its users, including Plaintiff and class members. Users provided this information based on Flo Health's repeated promises that users' personal health data would remain private and that it would not be sold or otherwise shared with third parties for purposes unrelated to the functioning of the Flo App.

46. In fact, Flo Health affirmatively represented that it would, under no circumstances, share users' personal health data without user consent. While Flo Health disclosed that it might share "certain" information with third parties who it uses to "supply software applications, web hosting and other technologies for the App[,]" Flo Health promised this would not include "information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by [users]" or "survey results" and "articles [users] view."[12]

47. On or about February 22, 2019, the Wall Street Journal reported that Flo Health shares its users' personal health data with third parties, including when a user was menstruating or intended to get pregnant.[13]

48. Further investigations have revealed there were multiple third parties to whom Flo Health disclosed consumers' personal health data. Between at least 2016 and 2019, Flo Health contracted with numerous advertising and data analytics firms like Google and Facebook to provide, among other things, various marketing and analytics services in connection with the Flo App. These contracts provided the third parties with access to the personal health information of Flo App users.

49. Despite Flo Health's promises that it would not sell or otherwise disclose personal health information to third parties, including a user's survey results and "information

---

[12] *Privacy Policy (archived)*, under *Disclosure of Information, Information We Share with Third Parties*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/aug-28-2017 (effective Aug. 28, 2017); *see supra* note 4.
[13] *See supra* note 7.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by [users]," Flo Health made users' personal health data accessible to third parties, including Google and Facebook, two of the largest advertising companies in the country.[14]

50.     Further, despite Flo Health's promise that it would only provide data to third parties as "necessary to perform their work" and "will never use such information for any other purpose except to provide services in connection with the App[,]" Flo Health did not restrict or otherwise limit how third parties like Google and Facebook could use the personal health data of Plaintiff and class members.[15]

51.     In fact, the terms of service governing Flo Health's agreement with these third parties allowed the third parties to receive, collect, and use the data for their own purposes, completely unrelated to any services provided to users in connection with the Flo App. Moreover, the disclosure of Plaintiff's and class members' personal health data to the third parties did not improve or otherwise relate to the functionality of the Flo App, but was intended to monetize the App through the use of advertisements, for the benefit of Flo Health as well as the third parties and their advertising clients.

52.     Flo Health secretly entered into these contracts to disclose users' sensitive health data. For years, Flo Health disclosed the personal health data of its users without their knowledge or consent, in violation of their privacy rights. Consequently, Plaintiff and class members had no opportunity to provide consent to the disclosures, or to the use of their personal health information for advertising and other non-App purposes.

53.     Likewise, through this deceit, Plaintiff and class members had no opportunity to provide consent to the third-party collection, analysis, and use of their personal health data for other parties' benefit.

---

[14] *See Aug. 28, 2017 Privacy Policy (archived)*, *supra* note 12; *May 25, 2018 Privacy Policy (archived)*, *supra* note 4.
[15] *See Aug. 28, 2017 Privacy Policy (archived)*, *supra* note 12; *May 25, 2018 Privacy Policy (archived)*, *supra* note 4.

**II.    Flo Health Designed Its App to Facilitate the Collection of Users' Private Data**

54.    Flo Health designed the Flo App to request users to input personal health and lifestyle-related information under the guise that they would receive better services. When a user creates a new account on the Flo App, the app asks several questions related to the timing of the user's menstrual cycle, the discomfort of their menstrual cycle, mood swings, preferred birth control methods, reproductive health disorders, and their level of satisfaction with their sex life and romantic relationships. Some of these questions are reflected in the example screenshots below:



CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL



55.      The Flo App asks users to input more than 30 responses to personal questions, while setting up the App for the first time, including:

a.      How long have you been trying to conceive?

b.      Do you have any reproductive diseases?

c.      What medication are you currently taking? How often?

d.      How often do you have sex?

e.      Do you experience any pain during sex?

f.      How often do you masturbate?

g.      Is it easy for you to orgasm?

56.      The Flo App also regularly reminds users to update the App with additional personal health-related information as they continue to use the App. For example, the interface of the Flo App suggests that users "[l]og your menstruation days in a handy period calendar, ovulation and fertility tracker, schedule menstrual cycle reminders, record moods and PMS symptoms, use a due date calculator, follow a pregnancy calendar . . . ." As the screenshots

below demonstrate, the information at issue includes information about a user's sexual activity, sex drive, mood, premenstrual systems, and vaginal discharge, among other sensitive topics:



57.     In addition to its relentless demand for personal health information, Flo Health warns of "possible imbalances in your body" that could go undetected by the App without the data, and urges the user to input this information so that Flo Health can "advi[s]e you to see a doctor" if necessary, and to otherwise "stay on top of [their] health." Such scare tactics caused millions of users to divulge boundless personal information about their physical and mental health, and their personal lifestyles and sexual activity, to Flo Health. As a direct result, Defendant has collected massive amounts of personal health data about millions of consumers, including Plaintiff and members of the class.

58.     Despite Flo Health's repeated assurances that it would not disclose users' personal private information, Flo Health granted third parties full access to any and all

information obtained from Flo App users, which the third parties could use for any purpose, including sending targeted advertisements to users based upon their health information.

59.     Specifically, Flo Health provided third parties with "Standard App Events" and "Custom App Events" that were created each time a user interacted with the Flo App. "Standard App Events" are records of routine app functions, such as launching or closing the app, while "Custom Apps Events" are records of user-app interactions unique to the app itself. For example, when a user enters menstruation dates, their weight, sleep cycle, mood, physical or mental symptoms, or any other information in the Flo App, the Flo App registers the user's interaction with that feature as a Custom App Event. Through these Custom App Events, every single interaction within the Flo App is recorded and stored.

60.     Flo Health receives and stores a record of all the Custom App Events that occur in the Flo App across its users' devices. Flo Health claims to make use of these records to improve the Flo App's functionality and identify which features are likely to interest new users.

61.     Flo Health purposefully designed the Custom App Events of the Flo App to have a descriptive title. For example, when a user enters the week of their pregnancy into the app's calendar, the Flo App records the Custom App Event "R_PREGNANCY_WEEK_CHOSEN." When a user selects a feature to receive menstruation reminders in the "wanting to get pregnant branch" of the app, the Flo App records the Custom App Event "P_ACCEPT_PUSHES_PERIOD."

62.     As early as 2016, Flo Health integrated SDKs into the Flo App. These SDKs were provided by third-party marketing and analytics firms, and allowed these firms to intercept, receive, and collect users' personal health information, which was recorded as users entered the information on their devices into the Flo App through these Custom App Events.

63.     Because of the way that Flo Health titles the Custom App Events of the Flo App (that is, titling them "R_PREGNANCY_WEEK_CHOSEN" rather than something generic, like "Event 1"), the Custom App Events convey personal information about the users' health, including their menstruations, fertility, and/or pregnancies. For example, if a user, through their interactions with the Flo App, indicates a date in the pregnancy calendar, that date

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

is collected, transmitted, and disclosed to third parties by Flo Health without the user's authorization or consent. Third parties can then access and use this information for any purpose, including analytics and marketing of pregnancy-related products to the user. Different products might be advertised if the user removes a date from the pregnancy calendar, indicating that the user's pregnancy ended. But the user did not consent to any disclosure or use of her data unrelated to the functioning of the Flo App.

64.     By including personal health information in the title of the Custom App Events, Flo Health, without consent or authorization, transmitted and disclosed Flo App users' communications of private personal health information with third parties. This directly contradicts Flo Health's statements in its privacy policies that it would not disclose this information.

65.     Despite assurances made to consumers, Flo Health spent years feeding the personal and protected health information of millions of users to third parties through the SDKs to use in any manner whatsoever, in the form of Custom App Events.

### III.     Defendant's Failure to Obtain User Consent

66.     Between 2017 and 2019, Flo Health made repeated assurances to Flo App users, promising that it would keep personal health data they entered into the App private, and that Flo Health would only use Flo App users' data to provide and improve Flo App's services.

67.     Based on Flo Health's representations and the guarantees made in the company's privacy policy, millions of users entrusted Flo Health with personal information regarding their physical and mental health, romantic relationships, sex life, and lifestyle preferences.

68.     Flo Health's privacy policy assures customers that "[w]hen you use Flo, you are trusting us with intimate personal information. We are committed to keeping that trust, which is why our policy as a company is to take every step to ensure that individual user's data and privacy rights are protected . . . ."[16]

---

[16] *Privacy Policy*, FLO HEALTH, INC., https://flo.health/privacy-policy (effective Oct. 24, 2020).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

69.     More specifically, the Flo Health privacy policy, effective between approximately August 28, 2017 and February 19, 2019, stated that Flo Health "may share certain" personal data with third parties, but only "information that is reasonably necessary to perform their work" which involves "supply[ing] software applications, web hosting and other technologies for the App."[17]

70.     The same Flo Health privacy policy stated that any information shared with third parties "exclud[ed] information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by you and that you do not elect to share . . . ."[18]

71.     The same Flo Health privacy policy stated that third parties could not use Flo App users' personal information "for any other purpose except to provide services in connection with the App."[19]

72.     Furthermore, later versions of the Flo Health privacy policy, effective between approximately May 25, 2018 and February 19, 2019, specifically stated that Flo Health would not disclose "any data related to health" to either of the mobile analytics firms:[20]

a.     "We may share certain non-identifiable information about you and some Personal Data (**but never any data related to health**) in order to carry out marketing activities and provide you better and more targeted, tailor-made service."[21]

b.     "We may share certain non-identifiable information about you and some Personal Data (but never any data related to health) . . . ."[22]

73.     Consistent with the assurances made in the Flo Health privacy policy, new users of the Flo App receive a notification, informing them that personal data disclosed to a

---

[17] *Aug. 28, 2017 Privacy Policy (archived)*, *supra* note 12; *see also Privacy Policy: Archive*, https://flo.health/privacy-policy-archived (policies effective from Nov. 13, 2017 to Feb. 19, 2019).

[18] *Privacy Policy: Archive*, *supra* note 17 (policies effective from Aug. 28, 2017 to Feb. 19, 2019).

[19] *Id.*

[20] *May 25, 2018 Privacy Policy (archived)*, *supra* note 4; *see also Privacy Policy: Archive*, https://flo.health/privacy-policy-archived (policies effective from July 16, 2018 to Feb. 19, 2019).

[21] *Privacy Policy: Archive*, *supra* note 20 (policies effective from May 25, 2018 to Feb. 19, 2019) (emphasis added).

[22] *Id.*

1  third party is "strictly limited" to technical identifiers, age groups, subscription status, and data

2  indicating that the App has been opened by the user.



21     74.     Flo Health's privacy policy stated that these third parties would only receive

22  "non-personally identifiable information," "[p]ersonal [d]ata like device identifiers[,]" or

23  "device identifiers." The privacy policy did not indicate that these third parties would receive

24  access to any record of the Custom App Events (containing personal health data) registered by

25  the Flo App.[23]

26     75.     Specifically, the Flo Health privacy policy stated as follows:

27

28  [23] *Id.*

a.    "We use Facebook Analytics and Google Analytics tools to track installs of our App. Normally, Facebook and Google collect **only non-personally** identifiable information, though some Personal Data like device **identifiers** may be transferred to Facebook and Google."[24]

b.    "**Fabric may use device identifiers** that are stored on your mobile device and allow us to analyze your use of the App in order to improve our app feature [sic]."[25]

76.    Besides secretly disclosing personal health information to Google and Facebook, Flo Health did not disclose that Google and Facebook could link device identifiers to specific persons. This essentially nullified Flo Health's assurances that any disclosed information would be non-personally identifiable. Thus, every disclosure of Custom App Events to Google or Facebook violated the privacy policy.

77.    Flo Health further violated their privacy policy by agreeing to contractual terms that directly contradicted the privacy policy's limitation on how user information would be used. Flo Health's contracts with third parties included provisions allowing the use of any user information obtained from Flo App users for the third party's own purposes, advertising, marketing, and other purposes forbidden by the privacy policy:

a.    Facebook's Business Tools Terms stated: "We use [aggregated] Event Data to personalize the features and content (including ads and recommendations) we show people on and off our Facebook Company Products . . . . We may also use Event Data . . . for research and development purposes, and to . . . improve the Facebook Company Products." That "Event Data" includes Custom App Events.

b.    Google Analytics' Terms of Service stated: "Google and its wholly owned subsidiaries may retain and use . . . information collected in [Flo Health's] use of the Service."

c.    AppsFlyer's Terms of Use stated: "You hereby allow AppsFlyer to collect, store, use and process Customer Data," where "Customer Data" was defined to include "data concerning the characteristics and activities" of app users.

d.    The Fabric Software and Services Agreement stated: "[Flo Health] acknowledges and agrees that Google [Fabric] may use Usage Data for its own business purposes," where "Usage Data" was defined to mean "all information,

---

[24] *Privacy Policy: Archive*, *supra* note 20 (policies effective from May 25, 2018 to Aug. 6, 2018) (emphasis added).
[25] *Privacy Policy: Archive*, *supra* note 20 (policies effective from May 25, 2018 to Feb. 19, 2019) (emphasis added).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

data and other content, not including any [identifying data], received by Google related to [Flo Health]'s use of the Fabric Technology . . . .[26]

78.     As a result of the agreements with Flo Health, these and other third parties were able to access and use personal health data about users, including whether they were pregnant, attempting to get pregnant, or menstruating, to boost their own revenue by targeting Plaintiff and class members for advertisements and marketing campaigns.

79.     Because Flo Health failed to disclose the full extent of its data practices, Plaintiff and class members were not able to consent to use of their personal health data.

80.     Following publication of the Wall Street Journal report exposing Flo Health's privacy violations, Flo Health received hundreds of complaints from Flo App users about the unauthorized disclosures of health information to third parties. For example, users stated:

a.     "I'm absolutely [sic] disgusted at this invasion of my most personal information."

b.     "This is private personal data and I feel disgusted that you are now making this data available to third parties."

c.     "Why would you EVER think it is ok to share that personal, private information with a third [sic] party?"[27]

81.     Alice Berg, a 25-year-old student, told the Wall Street Journal, "I think it's incredibly dishonest of them that they're just lying to their users especially when it comes to something so sensitive."[28]

82.     Additionally, following the Wall Street Journal publication, more than 100 Flo App users asked Flo Health to delete their accounts and/or data, or told Flo Health they were deleting, or would be deleting, the Flo App.

**IV.     Plaintiff and Class Members Had a Reasonable Expectation of Privacy with Respect to Their Personal Health Data**

83.     Plaintiff and class members had, and continue to have, a reasonable expectation of privacy in their personal health data that Flo Health collected, stored, and disclosed to third

---

[26] Complaint, *In the Matter of FLO HEALTH, INC.*, FEDERAL TRADE COMMISSION, No. 1923133, 5, https://www.ftc.gov/system/files/documents/cases/flo_health_complaint.pdf.
[27] *Id.* at 5-6.
[28] *See supra* note 7.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

parties. This reasonable expectation included that their personal health information would not be divulged to third parties for any purpose unnecessary to the functioning of the Flo App.

84.     Several studies examining the collection and disclosure of consumers' personal data confirm that the disclosure of personal data from millions of individuals, as the Defendant has done here, violates expectations of privacy that have been well-established as general social norms.

85.     Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

86.     For example, a recent study by Consumer Reports shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumers' data, and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[29] Moreover, according to a study by Pew Research Center, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[30]

87.     The actions of consumers are consistent with these preferences. For example, following a new rollout of iPhone operating software—which asks users for clear, affirmative consent before allowing companies to track users—85 percent of worldwide users and 94 percent of U.S. users typically choose not to share data when prompted.[31]

---

[29] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[30] Brooke Auxier, Lee Rainie, Monica Anderson, Andrew Perrin, Madhu Kumar & Eric Turner, *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

[31] Margaret Taylor, *How Apple screwed Facebook*, WIRED (May 19, 2021 6:00 A.M.), https://www.wired.co.uk/article/apple-ios14-facebook.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

88.     In addition, three bioethics and health law professors at Johns Hopkins University, the University of Pittsburgh, and Wake Forest University School of Law recently published a paper that explored the ethical concerns associated with the monetization of menstruation app data—i.e., the very conduct at issue here. The paper noted that given this sort of data's "intimate nature, users expected greater privacy and respect[]" and also explained that because this data was solicited by for profit apps and shared with other for-profit companies, the privacy concerns are even more acute: "[menstrual cycle details and other personal health data are] solicited by the apps, processed by Facebook-owned algorithms and converted into targeted advertisements. The potential for the triangulation of intersecting datasets heightens the threat and perceived harms of privacy violation."[32]

11

12

13

14

15

16

17

18

19

20

21

22

23

89.     The paper expands further on the unique privacy concerns with monetizing this personal health data: "[M]any users assume that the data they enter are protected by existing privacy regulations that apply to similarly sensitive data . . . . The apps' user interface capitalizes on the illusion of privacy of data contained on a handheld personal device and downplays the third party use of these data for profit. . . . We argue that in the case of menstruation apps, the sale of users' identified data is violating due to the expectations of privacy in relation to the intimacy of the data. . . . Unlike other targeted ads, these capitalize on an especially sensitive class of traditionally privileged health data. The resulting experience of advertisements tailored to one's menstrual or pregnancy status is uniquely invasive. Being sold tampons while you are bleeding represents an unprecedented loss of privileged consumer self-knowledge and the power associated. The resulting revelation of consumer preferences increases user vulnerability and helps explain the discomfort felt when users were made aware of this process."[33]

24

25

90.     The paper further highlights the real-world harm that users of ovulation apps experience when this personal health data is shared with third parties (without consent) for

26

27

28

---

[32] Marielle S. Gross, Amelia Hood & Bethany Corbin, *Pay No Attention to That Man behind the Curtain: An Ethical Analysis of the Monetization of Menstruation App Data*, IJFAB: INTERNATIONAL JOURNAL OF FEMINIST APPROACHES TO BIOETHICS, 4 (November 2020).
[33] *Id.* at 5-6.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

advertising purposes: "For example, consider someone using a menstruation app to assist in conception who, after two months, starts receiving advertisements for a local IVF clinic. Attempting to conceive is already correlated with feelings of anxiety; to perceive a suggestion of infertility may worsen those feelings . . . . In turn, anxiety can lower one's chance of conceiving . . . . Such use of advertisements risks psychological harm beyond any harm stemming from the potentially flawed health guidance."[34]

91.     The concern about sharing personal data about women's health and pregnancy efforts is compounded by the reality that advertisers view this type of information as particularly high value. Indeed, having access to the data women share with apps like the Flo App allows advertisers to obtain data on children before they are even born. As one article put it: "the datafication of family life can begin from the moment in which a parent thinks about having a baby."[35] The article continues "Children today are the very first generation of citizens to be datafied from before birth, and we cannot foresee — as yet — the social and political consequences of this historical transformation."[36]

92.     Other privacy law experts have expressed concerns about the disclosure to third parties of a user's personal health data. For example, Dena Mendelsohn—the former Senior Policy Counsel at Consumer Reports and current Director of Health Policy and Data Governance at Elektra Labs—explained that having your personal health information disseminated in ways you are unaware of could have serious repercussions, including affecting your ability to obtain life insurance and how much you pay for that coverage, increase the rate you're charged on loans, and leave you vulnerable to workplace discrimination.[37]

---

[34] *Id.* at 7.

[35] Veronica Barassi, *Tech Companies Are Profiling Us From Before Birth*, THE MIT PRESS READER (Jan. 14, 2021), https://thereader.mitpress.mit.edu/tech-companies-are-profiling-us-from-before-birth/.

[36] *Id.*

[37] Donna Rosato, *What Your Period Tracker App Knows About You*, CONSUMER REPORTS (Jan. 28, 2020), https://www.consumerreports.org/health-privacy/what-your-period-tracker-app-knows-about-you/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

93.     Mendelsohn, who is quoted in a recent Consumer Reports article highlighting the harms that could arise from the disclosure to third parties of personal menstrual health data, notes that "[w]ith issues like pregnancy discrimination still a concern for many women, those using reproductive health apps will want to be sure their private information stays private."[38] Given that "health app makers can collect, buy, and sell your data without your knowing consent[,]" Mendelsohn explains that app developers should use consumers' data only for the purpose of the app and not to share or sell the information, and should face strict penalties when they violate their privacy policies—as Flo Health did here.[39]

94.     Social norms reflecting the expectation that personal information shall be kept confidential and not used for an unauthorized purpose can also be found in Australian legal and ethical authority governing the management of confidential information. For example, the 13 Australian Privacy Principles ("APPs") from Schedule 1 of the Australian Privacy Amendment (Enhancing Privacy Protection) Act of 2012 require a privacy policy to disclose the purposes for which personal data is kept and whether the entity is likely to disclose the data to overseas recipients; prohibit the use or disclosure of personal information for anything other the primary purpose for which it was collected; and prohibit an entity from using or disclosing somebody's personal information for direct marketing unless they have a reasonable expectation that the information would be used for that purpose.[40] Australia requires even greater protection for "sensitive" information, which includes "information or an opinion about and individual's . . . sexual orientation or practices" and "health or genetic information."[41]

---

[38] *Id.*

[39] *Id.*

[40] *See* APPs 1, 6, & 7, OFFICE OF THE AUSTRALIAN INFORMATION COMMISSIONER, https://www.oaic.gov.au/privacy/australian-privacy-principles/read-the-australian-privacy-principles/.

[41] *What is personal information?*, under *What is sensitive information?*, OFFICE OF THE AUSTRALIAN INFORMATION COMMISSIONER, https://www.oaic.gov.au/privacy/your-privacy-rights/your-personal-information/what-is-personal-information/#SensitiveInfo.

95.     Flo Health purported to act consistently with the above norms and expectations by promising not to share users' personal health data with third parties and by promising that the limited data Flo Health did share would only be used to provide the Flo App's services.

96.     Instead, Flo Health violated the above norms by providing third parties with the personal health information of Flo Health's users, along with the unrestricted right to use the information for direct marketing or any other purpose, all without the authorization, consent, or knowledge of the users who provided the information. As one user stated: "Why would you EVER think it is ok to share that personal, private information with a third [sic] party?"[42]

## V.     The FTC Filed Suit Based on Flo Health's Privacy Violations

97.     In response to the Wall Street Journal's February 2019 article revealing Flo Health's invasive data sharing practices, the FTC launched an investigation into Flo Health's potential violation of state, federal, and international privacy laws.

98.     In January 2021, the FTC filed a complaint against Flo Health, which is incorporated herein by reference. The FTC stated that its investigation revealed that Flo Health disclosed the personal health information of millions of Flo App users to third parties.

99.     The FTC's investigation further determined that Flo Health conveyed personal health data in the form of Custom App Events to third parties between at least 2016 and 2019.

100.     Based on the findings of its investigation, the FTC determined that Flo Health had violated the privacy of Flo App users in several ways, including by: disclosing Flo App users' health information to third parties; disclosing information beyond non-personally identifiable information or device identifiers; and failing to limit third-party use of Flo App users' personal information, among other claims.

101.     Flo Health entered into a settlement with the FTC over its alleged privacy violations on or about January 13, 2021.

---

[42] Complaint, *supra* note 26 at 6.

102.     The finalized settlement required Flo Health to obtain an independent review of its privacy practices and obtain the consent of app users before making further disclosures of their health information.[43]

103.     The settlement also prohibited Flo Health from further misrepresenting the purposes for which it or entities to whom it discloses data collect, maintain, use, or disclose the data; how much consumers can control these data uses; Flo Health's compliance with any privacy, security, or compliance program; and how Flo Health collects, maintains, uses, discloses, deletes, or protects users' personal information.

104.     Certain Federal Trade Commissioners believed that the proposed settlement did not go far enough. Specifically, Commissioners Rohit Chopra and Rebecca Kelly Slaughter dissented from the proposed settlement, and (in a January 13, 2021 statement) expressed "disappoint[ment] that the [FTC] is not using all of its tools to hold accountable those who abuse and misuse personal data[,]" such as alleging Flo Health's violation of the FTC's Health Breach Notification Rule—which requires "vendors of unsecured health information, including mobile health apps, to notify users and the FTC if there has been an unauthorized disclosure."[44]

105.     Chopra and Slaughter stated further: "In our view, the FTC should have charged Flo with violating the Health Breach Notification Rule. Under the rule, Flo was obligated to notify its users after it allegedly shared their health information with [third parties] without their authorization. Flo did not do so, making the company liable under the rule." Enforcing this rule, they explained, "may induce firms to take greater care in collecting and monetizing our most sensitive information."[45]

**TOLLING, CONCEALMENT, AND ESTOPPEL**

106.     The above paragraphs are incorporated by reference as if fully stated herein.

---

[43] *FTC Finalizes Order with Flo Health, a Fertility-Tracking App that Shared Sensitive Health Data with Facebook, Google, and Others*, F.T.C. (June 22, 2021), https://www.ftc.gov/news-events/press-releases/2021/06/ftc-finalizes-order-flo-health-fertility-tracking-app-shared.
[44] Joint Statement, *supra* note 3 at 1, 2.
[45] *Id.* at 2, 3.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

107.    The applicable statutes of limitation have been tolled as a result of Flo Health's knowing and active concealment and denial of the facts alleged herein, namely its statements that assured users that their data would be protected, while surreptitiously disclosing users' personal health data to third parties without the users' consent.

108.    Among other things, Flo Health made public misrepresentations in its privacy policy regarding its supposedly restrictive data sharing practices. Specifically, the statements in Flo Health's privacy policy quoted in ¶¶ 68 to 77 above were intended to, and did, actively conceal the nature and extent of Flo Health's true intentions and actions. On information and belief, Flo Health also relied upon confidentiality agreements and other tactics to conceal its actions. Even after Flo Health's misconduct was uncovered and publicly reported, Defendant continued to conceal its misconduct by actively denying the misconduct and continuing to falsely represent that it would protect users' personal health information from disclosure to third parties. All of these affirmative acts of concealment were in service of Flo Health's ongoing scheme to conceal the true nature of its conduct.

109.    As a result of Defendant's concealment, even with due diligence, Plaintiff and class Members could not have discovered the full scope of Flo Health's betrayal of trust to its users. Prior to the February 2019 Wall Street Journal article, Plaintiff and other class members presumed that Flo Health would take reasonable measures to safeguard the information due to the nature of the information, context in which it was provided, and other factors. This presumption continued to be reasonable even after the Wall Street Journal article, FTC action, and other public expressions of outrage over Flo Health's actions, because Flo Health continued to deny the allegations, and did so with the intention that users rely upon such denials. Therefore, all applicable statutes of limitation have been tolled by operation of the discovery rule, fraudulent concealment, and all other applicable doctrines including equitable estoppel and waiver, until the date that Flo Health published notice of its settlement with FTC, i.e. January 13, 2021[46].

---

[46] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**CLASS ACTION ALLEGATIONS**

110.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following class(es):

> All Australian residents who input their personal health data into the Flo Period and Ovulation Tracker App (the "Class") at any time from June 1, 2016 through June 22, 2021 (the "Class Period"). [47]

111.    Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) the Defendant, affiliates, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel, and their immediate families.

112.    **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals who are geographically dispersed over a vast continent. Individual Class members can be identified through Defendant Flo Health's records.

113.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. The claims of Plaintiff and the members of the Class arise from the same conduct by the Defendant and are based on the same legal theories.

114.    **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations. Plaintiff has no interest that is antagonistic to the interests of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the interests of the other members of the Class.

---

[47] Plaintiff has defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

115. **Predominant Common Questions:** The Class' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

a.    Whether Defendant engaged in the conduct alleged herein;

b.    Whether Defendant Flo Health violated Plaintiff and Class members' privacy rights;

c.    Whether Defendant Flo Health's acts and practices violated California Constitution art. I, § 1;

d.    Whether Defendant Flo Health's acts and practices amount to a breach of contract;

e.    Whether Defendant Flo Health's acts and practices amount to a breach of implied contract;

f.    Whether Defendant Flo Health was unjustly enriched;

g.    Whether Defendant Flo Health violated the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*;

h.    Whether Defendant Flo Health's acts and practices violated California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq.*;

i.    Whether Defendant Flo Health's acts and practices violated California's Business and Professions Code §§ 17200, *et seq.*;

j.    Whether Defendant's acts and practices violated the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*;

k.    Whether Defendant's acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

l.    Whether Defendant's acts and practices violated the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502;

m.    Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement;

n.    Whether Plaintiff and the Class members are entitled to actual, statutory, punitive, or other forms of damages, and other monetary relief; and

o.    Whether Australia respects foreign judgments so that class treatment would be appropriate in this forum.

116. **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication

of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

117.    Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

### CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

118.    California substantive laws apply to every member of the Class. Flo Health's Terms of Use states "These Terms of Use (this 'Agreement') is a legal agreement between [users] and Flo Health, Inc. . . . ."[48]

119.    This agreement states that "[a]ny dispute arising from this Agreement shall be governed by the laws of the State of California without regard to its conflict of law provisions. Sole and exclusive jurisdiction for any action or proceeding arising out of or related to this agreement shall be in an appropriate state or federal court located in San Francisco County, State of California . . . ."[49]

120.    By choosing California law for the resolution of disputes in the agreement, Flo Health concedes that it is appropriate for this Court to apply California law to the instant dispute. Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, U.S. Const. amend. XIV, § 1, and the Full Faith and Credit Clause, U.S. Const. art. IV, § 1. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and Class members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair. Flo Health maintains a California postal address at 541 Jefferson Ave., Suite 100, Redwood City, CA 94063-1700, and conducts substantial business in California, such that

---

[48] Terms of Use, *supra* note 10.
[49] *Id.*, under *Miscellaneous* (emphasis removed).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

California has an interest in regulating Defendant Flo Health's conduct under its laws. Defendant Flo Health's decision to reside in California and avail itself of California's laws renders the application of California law to the claims herein constitutionally permissible.

121.    The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**Violation of Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**Against Defendant Flo Health**
**(On Behalf of Plaintiff and the Class)**

122.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

123.    A plaintiff asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

124.    Flo Health's disclosure of Plaintiff and Class members' personal health data, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making personal decisions or conducting personal activities, constitutes an intentional intrusion upon Plaintiff and Class members' solitude or seclusion in that Flo Health shared these personal details that were intended to stay private with third parties without users' consent, and despite Flo Health's express promises that it would not do so.

125.    Plaintiff and Class members had a reasonable expectation of privacy in their personal health data. Plaintiff and Class members did not consent to, authorize, or know about Flo Health's intrusion at the time it occurred. Plaintiff and Class members never agreed that Flo Health could disclose their personal health data.

126.    Plaintiff and Class members did not consent to, authorize, or know about Flo Health's intrusion at the time it occurred. Plaintiff and Class members never agreed that their personal health data would be collected or disclosed to third parties.

127.    Flo Health's intentional intrusion on Plaintiff and Class members' solitude or seclusion without consent would be highly offensive to a reasonable person. Plaintiff and Class members reasonably expected, based on Flo Health's repeated assurances, that their personal health data would not be disclosed. Flo Health's conduct is especially egregious as it failed to contractually restrict what third parties do with Plaintiff and Class members' personal health data once it is disclosed.

128.    The surreptitious taking and disclosure of personal health data from thousands if not millions of individuals was highly offensive because it violated expectations of privacy that have been established by social norms. Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared. Moreover, the disclosure and collection of personal health data by Flo Health violated its own privacy disclosures and representations.

129.    Given the extremely personal nature of the data Flo Health collected and disclosed, such as private details about users' sexual activity, menstrual cycles, and physical and mental health, this kind of intrusion would be (and in fact is) highly offensive to a reasonable person.

130.    The highly offensive nature of Flo Health's intentional intrusion into Plaintiff's and Class members' personal affairs is confirmed by its FTC settlement and the public outrage and hundreds of complaints received by Flo Health after its data sharing practices were disclosed, instructing Flo Health to delete their data or their accounts or that they would be deleting their accounts.

131.    Users have expressed extreme outrage in response to Flo Health's data sharing practices:

a.    "I'm absolutely [sic] disgusted at this invasion of my most personal information."

b.   "This is private personal data and I feel disgusted that you are now making this data available to third parties."

c.   "Why would you EVER think it is ok to share that personal, private information with a third [sic] party?"[50]

132.   Alice Berg, a 25-year old student, told the Wall Street Journal, "I think it's incredibly dishonest of them that they're just lying to their users especially when it comes to something so sensitive[.]"[51]

133.   As a result of Flo Health's actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

134.   Plaintiff and Class members have been damaged as a direct and proximate result of Flo Health's invasion of their privacy and are entitled to just compensation, including monetary damages.

135.   Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests, as well as a disgorgement of profits made by Flo Health as a result of its intrusions upon Plaintiff's and Class members' privacy.

136.   Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Flo Health's actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Flo Health from engaging in such conduct in the future.

137.   Plaintiff also seeks such other relief as the Court may deem just and proper.

**SECOND CLAIM FOR RELIEF**
**Invasion of Privacy and Violation of the California Constitution, Art. 1, § 1**
**Against Defendant Flo Health**
**(On Behalf of Plaintiff and the Class)**

138.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

---

[50] Complaint, *supra* note 26 at 5-6.
[51] *See supra* note 7.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

139.     Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." California Constitution, art. I., § 1.

140.     To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

141.     The right to privacy in California's constitution creates a right of action against private and government entities.

142.     Plaintiff and Class members have and continue to have a reasonable expectation of privacy in their personal information, identities, data, and medical information pursuant to Article I, Section 1 of the California Constitution.

143.     Plaintiff and Class members had a reasonable expectation of privacy under the circumstances, including that: (i) the data collected by Defendant Flo Health included personal information and decisions, including whether to bear children, their menstruation cycles, and fertility issues; (ii) Plaintiff and Class members did not consent or otherwise authorize Flo Health to collect and disclose this private information with third parties for their own monetary gain; and (iii) Flo Health affirmatively assured Plaintiff and Class members that this information would not be disclosed unless as needed to provide Flo Health's services.

144.     The confidential and sensitive information, which Flo Health intruded upon, intercepted, collected, and disclosed, without Plaintiff and Class members' authorization or consent, personal health data, such as information concerning physical and emotional health, family planning, and romantic lifestyle, as well as Plaintiff's interests in making personal decisions or conducting personal activities.

145.     Flo Health's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the data collected was highly sensitive and personal, as protected by the California Constitution; (ii) Defendant did not have authorization

or consent to collect this information; and (iii) the invasion deprived Plaintiff and Class members the ability to control the circulation of said information, which is considered a fundamental right to privacy.

146.    Flo Health's invasion violated the privacy rights of hundreds of thousands of Class members, including Plaintiff, without authorization or consent. Their conduct constitutes a severe and egregious breach of social and legal norms in the United States and Australia.

147.    As a result of Flo Health's actions, Plaintiff and Class members have sustained damages and will continue to suffer damages as a direct and proximate result of Flo Health's invasion of privacy.

### THIRD CLAIM FOR RELIEF
**Breach of Contract against Defendant Flo Health**
**(On Behalf of Plaintiff and the Class)**

148.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

149.    Plaintiff entered into a contract with Flo Health by downloading and using the Flo App. In connection with using the Flo App, both parties agree to abide by Flo Health's Terms of Use ("TOU"). Plaintiff has fully complied with her obligations under the TOU with regard to her use of Flo Health's product and services.

150.    The TOU states that "[b]y creating an account or accessing or using the App, you acknowledge that you accept and agree to be bound by the terms of this Agreement." Plaintiff and Defendant are subject to Flo Health's privacy policy, which is incorporated into the TOU.[52]

151.    Defendant Flo Health's privacy policy states that it only provides users' personal data to third parties when that data "is reasonably necessary to perform their work," which may include "suppl[ying] software applications, web hosting and other technologies for the App." Flo Health breached the contract because it did not disclose this information to

---

[52] Terms of Use, *supra* note 10.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

"provide services in connection with the App."[53] Flo Health allowed third parties to use this information for any purpose, including for their own benefit like research, development, and targeted advertising that was unrelated to the stated purpose disclosed by the privacy policy.

152.    Flo Health's privacy policy stated that any information shared with third parties "exclud[ed] information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by you and that you do not elect to share."[54] Flo Health breached the contract because it disclosed users' personal health data regarding marked cycles, fertility cycles, pregnancy, and other health information in the form of Custom App Events to third parties.

153.    Flo Health's privacy policy stated that Flo Health would not disclose "any data related to health" to either of the mobile analytics firms AppsFlyer or Flurry.[55] Flo Health breached the contract because it disclosed to AppsFlyer and Flurry Custom App Events which contained personal health data.

154.    Flo Health's privacy policy stated that Flo Health would only provide "non-personally identifiable information," "Personal Data like device identifiers," or "device identifiers"[56] to Facebook, Google, and Fabric. Flo Health breached the contract because it provided Facebook, Google, and Fabric access to Custom App Events which conveyed identifiable information and personal health data, unlike device identifiers.

155.    By disclosing Plaintiff and Class members' personal health data to third parties without their consent, Defendant Flo Health has breached material terms of the contract.

156.    Had Plaintiff and Class members known that Flo Health would disclose their personal health data to third parties without their consent, they would not have contracted with Flo Health.

---

[53] *Privacy Policy: Archive*, *supra* note 17 (policies effective from Aug. 28, 2017 to Feb. 19, 2019).
[54] *Id.*
[55] *Privacy Policy: Archive*, *supra* note 20 (policies effective from May 25, 2018 to Feb. 19, 2019).
[56] *Id.*

157.     As a result of Flo Health's breach of contract, Plaintiff and Class members have suffered damages in an amount to be determined at trial. In addition, or in the alternative, Plaintiff and Class members seek damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interest. By sharing their personal health data with third parties without consent, Flo Health invaded Plaintiff and Class members' privacy interests. As a result of Flo Health's breach of the TOU and privacy policy, Plaintiff and Class members have suffered damages.

**FOURTH CLAIM FOR RELIEF**
**Breach of Implied Contract Against Defendant Flo Health**
**(On Behalf of Plaintiff and the Class)**
**(In the Alternative)**

158.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

159.     Plaintiff alleges this claim in the alternative to her Third Claim for Relief.

160.     Plaintiff entered into an implied contract with Defendant by downloading and using the Flo App. In connection with using the Flo App, both parties agree to abide by Flo Health's TOU. Plaintiff has fully complied with her obligations under the TOU with regard to her use of Flo Health's product and services.

161.     Defendant solicited and invited prospective customers such as Plaintiff and Class members to use the Flo App with claims that Flo Health cares about Plaintiff and Class members' privacy rights.

162.     Flo Health's offer included specific assurances from Flo Health's privacy policy, including that Flo Health would only share "certain" personal data with third parties, limited to only the "information that is reasonably necessary to perform their work" in support of the Flo App.[57]

163.     Plaintiff and Class members accepted Flo Health's offers by downloading the Flo App and entering personal health data into the Flo App because of these promises.

---

[57] *Privacy Policy: Archive*, *supra* note 17 (policies effective from Aug. 28, 2017 to Feb. 19, 2019).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

164.     In entering into such implied contracts, Plaintiff and Class members reasonably believed that Flo Health would comply with relevant laws and regulations, including privacy laws, as well as Defendant's own assurances.

165.     Plaintiff and Class members reasonably believed that Flo Health would not disclose personal information regarding their fertility cycles, lifestyle choices, and romantic relationships with third parties, as stated in its privacy policy.

166.     Flo Health's implied promise not to disclose Plaintiff and Class members' sensitive personal information to third parties is evidenced by, e.g., the representations in Flo Health's TOU and privacy policy set forth above.

167.     Plaintiff and Class members would not have downloaded or made use of the Flo App in the absence of such promises.

168.     Plaintiff and Class members fully performed their obligations under the implied contracts with Flo Health by abstaining from making any "forbidden use" of the Flo App, as dictated by the Flo Health's TOU.[58]

169.     Flo Health breached its implied contract with Plaintiff and Class members by secretly collecting and disclosing sensitive personal data for Flo Health's own benefit, in violation of the TOU and privacy policy.

170.     By disclosing Plaintiff and Class members' personal health data to third parties without their consent, Flo Health has breached material terms of the implied contract.

171.     As a result of Flo Health's breach of implied contract, Plaintiff and Class members have suffered damages in an amount to be determined at trial. In addition, or in the alternative, Plaintiff and Class members seek damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interest. By sharing their personal health data with third parties without consent, Flo Health invaded Plaintiff's and Class members' privacy interests. As a result of Flo Health's breach of the TOU and privacy policy, Plaintiff and Class members have suffered damages.

---

[58] Terms of Use, *supra* note 10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment Against Defendant**
**(On Behalf of Plaintiff and the Class)**
**(In the Alternative)**

172.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

173.    Plaintiff alleges this claim in the alternative to her Third Claim for Relief.

174.    Defendant received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

175.    Plaintiff and Class members conferred a benefit upon Flo Health in the form of valuable sensitive personal data that Flo Health collected from Plaintiff and Class members, without authorization and proper compensation. Flo Health has collected, disclosed, and otherwise misused this information for its own gain, providing Flo Health with economic, intangible, and other benefits, including substantial monetary compensation from third parties who received Plaintiff and Class members' sensitive personal data.

176.    Defendant unjustly retained those benefits at the expense of Plaintiff and Class members because Defendant's conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

177.    The benefits that Defendant derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. It would be inequitable under unjust enrichment principles in California and every other state for Defendant to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

178.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

**SIXTH CLAIM FOR RELIEF**
**Stored Communications Act ("SCA") Against Defendant Flo Health**
**18 U.S.C. §§ 2701, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

179.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

180.     The SCA provides that a person "providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service[.]" 18 U.S.C. § 2702(a)(1).

181.     "Electronic communication" is broadly defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" 18 U.S.C. § 2510(12).

182.     "Electronic storage" is defined as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and . . . any storage of such communication by an electronic communication service for purposes of backup protection of such communication[.]" 18 U.S.C. § 2510(17)(A)-(B).

183.     "Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications[.]" 18 U.S.C. § 2510(15).

184.     "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

185.     Flo Health, as a corporation, is a person as defined under 18 U.S.C. § 2510(6).

186.     Plaintiff and Class members, as individuals, are persons as defined under 18 U.S.C. § 2510(6).

187.     Plaintiff and Class members reasonably expected that Flo Health's service did not include disclosing their "electronic communications," i.e., their data (as broadly defined), based, in part, on Flo Health's failure to provide ***any*** disclosures or obtain consent for

41

permission to do so, as well as Flo Health's affirmative misrepresentations that it would not disclose this information. Third parties were not an intended party or recipient of Plaintiff and Class members' personal health data. Plaintiff and Class Members did not consent or authorize Flo Health to disclose their communications to any third parties.

188.    Flo Health stores Plaintiff and Class members' electronic communications for back-up purposes in the event that a user needs to restore their account. During this period, Flo Health, without authorization, intentionally divulged and transmitted Plaintiff and Class members' personal health data to third parties.

189.    Flo Health knowingly divulged the contents of Plaintiff and Class members' communications while they were in electronic storage to third parties, in intentional or in reckless disregard for Plaintiff's and Class members' privacy rights. Flo Health did so for its own benefit, and for the benefit of third parties, in order to increase and improve their marketing and advertising efforts.

190.    Flo Health's actions were at all relevant times knowing, willful, and intentional, as evidenced by the fact that this was Flo Health's routine business practice and it purposefully failed to disclose this practice to consumers.

191.    As a result of Flo Health's violations of the SCA, Plaintiff and Class members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

192.    Pursuant to 18 U.S.C. § 2707(b), Plaintiff and Class members are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Defendant as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

**SEVENTH CLAIM FOR RELIEF**
**Violation of California Confidentiality of Medical Information Act**
**("CMIA")**
**Against Defendant Flo Health**
**California Civil Code Section 56.06**
**(On Behalf of Plaintiff and the Class)**

193.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

194.   Flo Health is deemed a provider of health care under California Civil Code Section 56.06 subdivision (b), because it offers software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or for the diagnosis, treatment, or management of a medical condition.

195.   Specifically, the Flo App is designed for users to store information relating to their reproductive health, such as ovulation and menstrual cycles, and/or for the diagnoses, treatment, or management of users seeking to become pregnant or treat infertility. Flo Health is therefore subject to the requirements of the CMIA and obligated under California Civil Code section 56.06 subdivision (b) to maintain the same standards of confidentiality required of a provider of health care with respect to medical information that it maintains on behalf of users.

196.   Flo Health violated California Civil Code section 56.06 because it disclosed to third parties Plaintiff's and Class members' personal health data without consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making personal decisions or conducting personal activities.

197.   This information was shared with third parties, whose business is to sell advertisements based on that data it collects about individuals, including the data Plaintiff and the Class shared with the Flo App.

198.   Flo Health also negligently disclosed medical information in violation of California Civil Code section 56.06 subdivisions (b) and (c) through the unauthorized disclosure of Plaintiff and Class members' personal health data.

**EIGHTH CLAIM FOR RELIEF**
**Violation of CMIA Against Defendant Flo Health**
**California Civil Code Section 56.101**
**(On Behalf of Plaintiff and the Class)**

199.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

200.    California Civil Code section 56.101 subdivision (a) requires that every provider of health care "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein."

201.    Flo Health failed to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information contained therein because it disclosed to third parties Plaintiff's and Class members' personal health data without consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making personal decisions or conducting personal activities.

202.    Flo Health's failure to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information was, at the least, negligent and violates California Civil Code section 56.101 subdivision (a).

**NINTH CLAIM FOR RELIEF**
**Violation of CMIA Against Defendant Flo Health**
**California Civil Code Section 56.10**
**(On Behalf of Plaintiff and the Class)**

203.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

204.    California Civil Code section 56.10 subdivision (a) prohibits a health care provider from disclosing medical information without first obtaining an authorization, unless a statutory exception applies.

205.    Flo Health disclosed medical information without first obtaining authorization when it disclosed to third parties Plaintiff's and Class members' personal health data without

consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making personal decisions or conducting personal activities. No statutory exception applies. As a result, Flo Health violated California Civil Code section 56.10 subdivision (a).

**TENTH CLAIM FOR RELIEF**
**Violations of Cal. Bus. & Prof. Code §§ 17200, _et. seq_. Against Defendant Flo Health**
**(On Behalf of Plaintiff and the Class)**

206.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

207.    Flo Health's business acts and practices are "unlawful" under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, _et. seq_. ("UCL"), because, as alleged above, Flo Health violated the California common law, California Constitution, and the other statutes and causes of action described herein.

208.    Flo Health's business acts and practices are "unfair" under the UCL. California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data. Flo Health violated this public policy by, among other things, surreptitiously collecting, disclosing, and otherwise misusing Plaintiff's and Class members' sensitive personal data without Plaintiff's and Class members' consent. Flo Health further engaged in unfair business practices because it made material misrepresentations and omissions concerning the information that Flo Health assured users it would not share with third parties, which deceived and misled users of the Flo App. Flo Health's conduct violates the policies of the statutes referenced herein.

209.    Flo Health's business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. The gravity of the harm of Flo Health secretly collecting, disclosing, and otherwise misusing Plaintiff's and Class members' sensitive personal data is significant, and there is no corresponding benefit resulting from such conduct. Finally, because Plaintiff and Class

1  members were completely unaware of Flo Health's conduct, they could not have possibly
2  avoided the harm.

3          210.    Flo Health's business acts and practices are also "fraudulent" within the
4  meaning of the UCL. Flo Health has amassed a large collection of sensitive personal data
5  without disclosing this practice and therefore acted without consumers' knowledge or consent.
6  Flo Health's business acts and practices were likely to, and did, deceive members of the public
7  including Plaintiff and Class members into believing this data was private. Flo Health assured
8  users that only *certain data* (like technical identifiers) would be disclosed as necessary, such
9  as "to provide services in connection with the App." Flo Health deceived users into believing
10 that under no circumstances would Flo Health disclose "information regarding [users'] marked
11 cycles, pregnancy, symptoms, notes and other information that is entered by [users]" or "survey
12 results."[59] Flo Health did not disclose that it would share this data with unauthorized third
13 parties.

14         211.    Flo Health's violations were, and are, willful, deceptive, unfair, and
15 unconscionable.

16         212.    Had Plaintiff and Class members known that their information would be
17 collected, and otherwise misused for Flo Health's own benefit, they would not have used the
18 Flo App.

19         213.    Plaintiff and Class members have a property interest in their sensitive personal
20 data. By surreptitiously collecting and otherwise misusing Plaintiff's and Class members'
21 information, the Defendant has taken property from Plaintiff and Class members without
22 providing just or any compensation.

23         214.    Plaintiff and Class members have lost money and property as a result of Flo
24 Health's conduct in violation of the UCL. Health data, such as the data collected by Flo Health,
25 objectively has value. Companies are willing to pay for health data, like the data collected and

26

27 ───────────────

[59] *Privacy Policy: Archive*, *supra* note 17 (policies effective from Aug. 28, 2017 to Feb. 19,
28 2019).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

shared with third parties by Flo Health. For instance, Pfizer annually pays approximately $12 million to purchase health data from various sources.[60]

215.     Consumers also value their health data. According to the annual Financial Trust Index Survey, conducted by the University of Chicago's Booth School of Business and Northwestern University's Kellogg School of Management, which interviewed more than 1,000 Americans, 93 percent would not share their health data with a digital platform for free. Half of the survey respondents would only share their data for $100,000 or more, and 22 percent would only share their data if they received between $1,000 and $100,000.[61]

216.     By deceptively taking and sharing this data with third parties, Flo Health has taken money or property from Plaintiff and Class members.

217.     For these reasons, Plaintiff seeks restitution and compensatory damages on behalf of herself and Class members.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of the Comprehensive Computer Data Access and Fraud Act**
**Against Defendant**
**California Penal Code 502**
**("CDAFA")**
**(On Behalf of Plaintiff and the Class)**

218.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

219.     The California Legislature enacted the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA") to "expand the degree of protection afforded . . . from tampering, interference, damage, and unauthorized access to [(including the extraction of data from)] lawfully created computer data and computer systems[,]" finding and declaring that "the proliferation of computer technology has resulted in a concomitant

---

[60] Adam Tanner, *How Data Brokers Make Money Off Your Medical Records*, SCIENTIFIC AMERICAN (Feb. 1, 2016), https://www.scientificamerican.com/article/how-data-brokers-make-money-off-your-medical-records/.

[61] Andrea Park, *How much should health data cost? $100K or more, according to patients*, BECKER'S HOSPITAL REVIEW (Feb. 12, 2020), https://www.beckershospitalreview.com/healthcare-information-technology/how-much-should-health-data-cost-100k-or-more-according-to-patients.html.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

proliferation of . . . forms of unauthorized access to computers, computer systems, and computer data[,]" and that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals . . . ." Cal. Penal Code § 502(a).

220.    Plaintiff's and the Class Members' devices on which they utilized the Flo App, including their computers, smart phones, and tablets, constitute "computer[s], computer system[s], [and/]or computer network[s]" within the meaning of the CDAFA.  Cal. Penal Code § 502(b)(4)-(5).

221.    Defendant violated § 502(c)(1)(B) of the CDAFA by knowingly accessing without permission Plaintiff's and Class Members' devices in order to wrongfully obtain and use their personal data, including their personal health data, in violation of Flo App users' reasonable expectations of privacy in their devices and data.

222.    Defendant violated Cal. Penal Code § 502(c)(2) by knowingly and without permission accessing, taking, copying, and using Plaintiff's and the Class Members' personally identifiable information, including their personal health data.

223.    The computers and mobile devices that Plaintiff and Class Members used when accessing the Flo App all have and operate "computer services" within the meaning of the CDAFA. Defendant violated §§ 502(c)(3) and (7) of the CDAFA by knowingly and without permission accessing and using those devices and computer services, and/or causing them to be accessed and used, *inter alia*, in connection with Flo Health's wrongful agreement to share such data with the third parties, who in turn, were granted unauthorized and unfettered use of said data.

224.    Defendant Flo Health violated §§ 502(c)(6) and (13) of the CDAFA by knowingly and without permission by Plaintiff and the Class, providing and/or assisting in providing the third parties the ability to access Plaintiff's and the Class' private and personal health data via the SDKs embedded into the Flo App.

225.    Under § 502(b)(12) of the CDAFA a "Computer contaminant" is defined as "any set of computer instructions that are designed to . . . record, or transmit information

within a computer, computer system, or computer network without the intent or permission of the owner of the information." Defendant violated § 502(c)(8) of the CDAFA by knowingly and without permission introducing a computer contaminant via the SDKs embedded into the Flo App which intercepted Plaintiff's and the Class Members' private and personal health data.

226.     Plaintiff and Class Members suffered damage and loss as a result of Defendant's conduct.  Defendant's practices have deprived Plaintiff and the Class Members of control over their valuable property (namely, their sensitive personal data), the ability to receive compensation for that data, and the ability to withhold their data for sale.

227.     Plaintiff and the Class seek compensatory damages in accordance with California Penal Code § 502(e)(1), in an amount to be proven at trial, and injunctive or other equitable relief.

228.     Plaintiff and the Class have also suffered irreparable and incalculable harm and injuries from Defendant's violations. The harm will continue unless the Defendant is enjoined from further violations of this section. Plaintiff and Class members have no adequate remedy at law.

229.     Plaintiff and the Class are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violations were willful and, upon information and belief, Defendant is guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294(c)(1)-(3). Plaintiff and the Class members are also entitled to recover their reasonable attorneys' fees under Cal. Penal Code § 502(e)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the proposed Class respectfully requests that the Court enter an order:

A.     Certifying the Class and appointing Plaintiff as the Class Representative;

B.     Finding that Defendant's conduct was unlawful, as alleged herein;

C.   Awarding declaratory relief against Defendant;

D.   Awarding such injunctive and other equitable relief as the Court deems just and proper;

E.   Awarding Plaintiff and the Class statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

F.   Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

G.   Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses; and

H.   Granting such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Date: August 10, 2021

KIRBY McINERNEY LLP

*/s/ Robert J. Gralewski, Jr.*
Robert J. Gralewski, Jr. (#196410)
600 B Street, Suite 2100
San Diego, CA 92101
Email: bgralewski@kmllp.com
Telephone: (619) 784-1442

– and –

William D. Harris II (*pro hac vice forthcoming*)
Harris Legal Advisors LLC
605 N. High Street, Ste. 146
Columbus, OH 43215
Email: will@harrislegaladvisors.com
Phone: (614) 504-3350

Michael E. Jacobs (*pro hac vice forthcoming*)
Hinkle Shanor LLP
P.O. Box 2068
Santa Fe, NM 87504
Email: mjacobs@hinklelawfirm.com
Phone: (505) 982-4554

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kent M. Williams (*pro hac vice forthcoming*)
Williams Law Firm
1632 Homestead Trail
Long, Lake MN 55356
Email: williamslawmn@gmail.com
Phone: (612) 940-4452

*Counsel for Plaintiff Clements
and the Proposed Class*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL